County of Mifflin, Appellant *v.* Mifflin County Airport Authority et al., Appellees.

Argued September 14, 1981, before Judges MEN-CER, ROGERS and WILLIAMS, JR., sitting as a panel of three.

*Timothy S. Searer*, with him *Francis A. Searer, Searer & Torquato*, for appellant.

*Jeffrey L. Snook, Brugler & Levin*, with him *Edward E. Knauss IV, Metzger, Wickersham, Knauss & Erb*, for appellees.

OPINION BY JUDGE WILLIAMS, JR., December 3, 1981:

The County of Mifflin (County) has appealed from an order of the Court of Common Pleas of Mifflin County denying the County's action for a writ of mandamus against the Mifflin County Airport Authority (Authority).

By its mandamus action the County sought to compel the Authority to transfer to the County all the property of the Mifflin County Airport.[1]  After a trial, the lower court concluded that the County did not have a clear legal right to such a property transfer; accordingly, the court denied the relief sought.

In March 1964 the County incorporated the Authority, pursuant to the Municipality Authorities Act of 1945.[2]  According to its stated corporate purpose, the Authority was to acquire, hold, construct, improve, maintain and operate "projects in the nature of airports."  After the incorporation of the Authority, the Mifflin County Airport was constructed with funds from local, state, and federal sources; as well as with funds from various bond issues and notes.  From its inception, the County Airport has been maintained and operated by the Authority.  Among the debts in-

---

[1] Also named as parties defendant were Donald A. Walters, Jr.; Ronald N. Myers; Dr. Robert L. Kaufman; and Marvin R. Clemens, board members of the Airport Authority.

[2] Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §§301 *et seq.*

curred by the Authority itself were two bond issues: "Airport Revenue Bonds, Series of 1965," in a principal amount of $250,000; and a supplemental bond issue entitled "Airport Revenue Bonds, Series of 1971," in a principal amount of $150,000. These two Authority bond issues remained outstanding at all times material to the instant case.

On February 14, 1980, the County adopted an ordinance which directed the Authority to transfer and convey, to the County, all the property of the County Airport; and to do so within twenty days.[3] The Authority refused to comply. Consequently, on March 6, 1980, the County filed its action for a writ of mandamus to compel the Authority to comply with the ordinance. There was no contention by the County of any failure or neglect by the Authority in the operation of the Airport. The County simply desired to gain direct control of the facility.

In resisting the ordinance and the County's mandamus action, the Authority challenged the legality of transferring the Airport's assets under the circumstances of this case. Specifically, the Authority asserted that such a transfer would violate, *inter alia,* the provisions of the Municipality Authorities Act of 1945, the Local Government Unit Debt Act,[4] and the

---

[3] Section 3 of the ordinance provided that: "The Mifflin County Airport Authority is hereby ordered and directed to execute any and all deeds, leases, notes, documents, grants-in-aid or other appropriate instrument necessary to transfer and convey all real estate, rights of way, easements, leases, chattels, personal property, equipment, fixtures, bank accounts, and any and all property of any nature, tangible, and intangible of the Mifflin County Airport (also known herein as project) to the County of Mifflin. Said transfer to be made within twenty (20) days of the adoption of this Ordinance."

[4] Act of July 12, 1972, No. 185, *as amended,* 53 P.S. §§6780-1 *et seq.*

trust indentures underlying the Authority's outstanding bond issues.

The County placed its reliance on Section 18(A) of the Municipality Authorities Act of 1945 (Act),[5] which provides as follows:

> If a project shall have been established under this act by a board appointed by a municipality or municipalities, which project is of a character which the municipality or municipalities have power to establish, maintain or operate, and such municipality or municipalities desire to acquire the same, it or they may by appropriate resolution or ordinance adopted by the proper Authorities, signify its or their desire to do so, *and thereupon the Authorities shall convey by appropriate instrument said project to such municipality* or municipalities, upon the assumption by the latter of all the obligations incurred by the Authorities with respect to that project. (Emphasis added.)

Clearly, Section 18 of the Act empowers a municipality to require an Authority to convey a project to the municipality; under the above Section a municipality may, by ordinance, impose upon an Authority the duty of executing the necessary documents for such a transfer of property.

Yet, under Section 14 of the Act,[6] there is a limitation on the power of an Authority to convey a project to a municipality. Section 14 provides in pertinent part as follows:

> When any Authority shall have finally paid and discharged all bonds which, together with the interest due thereon, shall have been se-

---

[5] 53 P.S. §321(A).

[6] 53 P.S. §317.

cured by a pledge of any of the revenues or receipts of a project, it may *(subject to any agreements concerning the operation or disposition of such project)* convey such project to the municipality or municipalities creating the Authority.... (Emphasis added.)

Section 14 has bearing on the instant case; because the Authority here involved has two issues of outstanding *revenue* bonds. Furthermore, the trust indentures underlying those bond issues have provisions concerning the operation and disposition of the Airport.

The trust indentures state that the County's right to acquire the assets of the Authority is limited to the Authority's failure, neglect or cessation of operation of the Airport.[7] Also, the trust indenture of the 1965 bond issue expressly provides that "[t]he Authority will not sell, exchange, lease, pledge *or otherwise dispose of* or encumber the Airport, or any part thereof. . . ."[8] (Emphasis added.) In short, Section 14 of the Act, as applied to this case, makes doubtful at best the legal power of the Authority to transfer the Airport to the County.

Mandamus is a high prerogative writ representing an extraordinary remedy which will not be granted in doubtful cases. It will issue only where there is a *clear* and specific legal right in plaintiff and a corresponding duty in defendant. *Francis v. Corleto,* 418 Pa. 417, 211 A.2d 503 (1965); *Cooper v. City of Greensburg,* 26 Pa. Commonwealth Ct. 245, 363 A.2d

---

[7] It was stipulated that the trust indentures contained such a limitation, and that the Authority had *not* failed, neglected or ceased to operate the Airport.

[8] Section 9.05. This provision and all other protections of the 1965 trust indenture were incorporated by reference into the 1971 indenture.

813 (1976). We agree with the lower court's conclusion, that Section 14 of the Act and the trust indentures for the outstanding bonds make doubtful the County's right to the transfer of the Airport property in the circumstances of this case. We also agree with the lower court's conclusion that the Local Government Unit Debt Act does not give the County a clear right, if any at all, to assume the debt obligations of the Authority *simply by enacting an ordinance,* as the County sought to do in this case.[9]

We affirm the order of the court below denying the action for a writ of mandamus; and, we do so on the thorough and able opinion of Judge Ziegler, who heard the case in the lower court.

### Order

And Now, the 3rd day of December, 1981, the order of the Court of Common Pleas of Mifflin County, dated the 10th day of October 1980, at Civil Action No. 409 of 1980, is hereby affirmed.

---

[9] By Section 2 of the County's ordinance, the County undertook to "expressly assume" all the obligations of the Authority.