**Borough of Wilkinsburg v. WIMCO Metals Inc.**

C.P. of Allegheny County, no. GD 97-11304.

*Patricia L. McGrail,* for plaintiff.
*Thomas A. Shumaker,* for defendants.

FRIEDMAN, *J.,* March 16, 2001—

## INTRODUCTION

In this case, plaintiff, the Borough of Wilkinsburg, sought to apply its business privilege tax retroactively to certain portions of the defendants' income. A non-jury trial was held before the undersigned, resulting in a verdict in favor of defendants and against the borough. We also filed a memorandum in support of the verdict,

which has been substantially incorporated herein. The borough then filed a motion for post-trial relief, which we denied by order dated November 15, 2000. This appeal followed.

The case centers on the *intention* of the borough to impose the tax on certain income received by defendants. *The question presented is not one of constitutionality of the tax,* nor is this a case where the earlier borough managers or borough councils were *ignoring* policy.

All exhibits were jointly presented to the court at the hearing and therefore are not designated as either the borough's or defendants' exhibits. Also, it should be noted that defendants were referred to during the hearing collectively as "WIMCO," and the court will do likewise hereinafter.

## FACTUAL BACKGROUND

In the early 1980s the borough decided it needed more revenue to meet its budgetary needs. After public hearings and discussions of alternatives with the borough's largest employers, including WIMCO and WTAE, a major radio and television broadcast station, the borough's council passed an ordinance imposing the tax on December 27, 1982. The first return was due in 1983 and was to reflect the tax payable for calendar year 1982. WIMCO filed virtually every return in a timely and complete fashion, although there was evidence to suggest one return, due in July 1992, may have been filed late, due to a clerical error.[1]

---

1. The return for tax year 1992 was due July 1, 1992, and reported 1991 income. This return was signed on July 22, 1992, and was filed on or before July 31, 1992. Exhibit 17.

It is important to note that at trial, WIMCO did not rely on pre-enactment promises that the ordinance regarding the tax would be *different* from the one that was in fact passed. This was the borough's characterization of WIMCO's case and the court rejected it as unsupported by the credible evidence. Rather, WIMCO's contention, which the court found highly credible, was that the borough, *through its own understanding* of the ordinance, as passed, and as clarified by ancillary rules and regulations embodied in the instruction sheet, *did not intend* to tax any receipts that involved a shipment from an out-of-state scrap metal supplier to an end user in Pennsylvania.

The ordinance, which may be found at exhibit A to the borough's complaint, exempts "[a]ny commissions paid by a broker to another broker on account of a purchase or sales contract initiated, executed or cleared with such other broker." Section 237-62(D)(3).[2] The ordinance also provides that

"The tax administrator and his or her duly appointed deputies under the direction of the borough manager

---

2. Even though WIMCO believed the portion of its businesses now at issue was a brokerage and exempt under the strict language of the ordinance, they honored their pre-passage commitment to the borough and paid the tax on a smaller portion of the brokerage proceeds that involved only the transactions that were *totally* within Pennsylvania.

At trial, the borough contended that because WIMCO *occasionally* takes title to the scrap metal (depending on whether it is shipped FOB seller or FOB buyer), WIMCO is a *seller* rather than a *broker.* The court rejected this contention and found that as to the transactions at issue, WIMCO was a broker, not a seller. The taking of title was merely a convenience in certain limited circumstances and was not, in the circumstances shown by the credible evidence here, sufficient to transform the brokerage into a seller.

are hereby empowered with the approval of the council of the Borough of Wilkinsburg to prescribe, adopt and promulgate rules and regulations relating to any matter pertaining to the administration and enforcement of this part 5 [the Business Privilege Tax], including provision for the examination and correction of returns, and payments alleged or found to be incorrect, or as to which overpayment is claimed, or found to have occurred, and charged with enforcing the provisions of this part 5 and any rules and/or regulations promulgated pursuant hereto." Section 237-68(B).

Shortly after the ordinance was passed, the borough's tax administrator promulgated "rules and regulations" which resulted in the instruction sheet to taxpayers that was sent out with the borough's Business Privilege Tax Return for the first year the tax was due, 1983, for calendar year 1982. (Exhibit 25.) The instruction sheet was sent out regularly in substantially the same form for most of the tax years at issue. No other instruction sheet has replaced the substance of the original one. The critical exclusionary language in the instruction sheet has been unchanged from the first one through all subsequent tax years: "Examples of exclusions: . . . (6) Receipts, or that portion thereof, attributable to interstate or foreign commerce . . . ." The credible evidence shows that for almost 15 years, both the borough and WIMCO regarded receipts as being "attributable to interstate or foreign commerce" if a shipment came from an out-of-state scrap metal supplier even if it was eventually delivered to a Pennsylvania buyer.

It is uncontested that the borough always enforced the ordinance in the manner understood by WIMCO. The borough presented no evidence to contradict the

testimony regarding either the *pre-enactment meetings* (involving, inter alia, its borough manager, Mr. Huff, and a representative of the borough's council, Mr. Chessman) or the *post-enactment* conduct of its borough managers, tax collectors and council members. From 1983-1995, the borough, through its various borough managers, interpreted the tax to apply *only* to transactions where defendants arranged a sale from a Pennsylvania supplier to a Pennsylvania purchaser. The borough's tax administrator also accepted this interpretation of its instruction sheet from 1983-1995. The borough's council also implicitly accepted this interpretation from 1983 to the date of trial, it being undisputed that council had neither passed a contrary ordinance nor caused different regulations to be promulgated by the tax administrator.

In 1995, the borough hired a new tax collector, the Central Tax Bureau of Pennsylvania Inc. (Centax). In 1997, Centax performed an audit[3] during which it was guided only by its own policies, procedures, and general interpretations of most business privilege ordinances. At trial, the credible evidence showed that Centax failed to inform itself of or consider the borough's own interpretation of its particular ordinance. It also showed that Centax's interpretation of the borough's ordinance was inconsistent with the borough's own long-standing interpretation.

---

3. A supplemental audit was also performed shortly before the trial in this case. The court understood from representations of counsel at the beginning of the trial in this matter that the tax years now at issue are 1992-1999, covering receipts during calendar years 1991-1998.

The borough raises the following issues in its statement of matters complained of on appeal:

"(1) In awarding the defendant, WIMCO . . . the full exemption which it claimed to Wilkinsburg's Business Privilege Tax, the court erroneously looked beyond the plain language of the ordinance and related documents and based its decision on what it determined to be the intention of Wilkinsburg in imposing the tax on the transactions at issue.

"(2) The court erroneously awarded WIMCO a full exemption from the payment of Business Privilege Tax and ignored the binding case precedent on the same issue because of the alleged intention of Wilkinsburg not to tax such transactions.

"(3) The court erroneously ignored clear evidence of Wilkinsburg's intent to impose the subject tax on WIMCO's transactions, at least from 1997 to the present.

"(4) The court erroneously failed to award Wilkinsburg all applicable penalty and interest for all tax years as such are properly assessed under the law on outstanding business privilege taxes, regardless of the taxpayer's good faith.

"(5) The court erroneously ruled in WIMCO's favor by allowing irrelevant 'good faith' testimony to be admitted.

"(6) The court may have considered the defense of laches in reaching its verdict. If so, it did so erroneously.

"(7) The court may have considered the defense of equitable estoppel in reaching its verdict. If so, it did so erroneously.

"(8) The court erroneously failed to award attorney's fees to Wilkinsburg. Wilkinsburg is entitled to attorney's

fees in a tax collection action pursuant to ordinance 2553."

The court has condensed items 1, 2, 3, 5 and 7 into two issues for the principal discussion. Item 6 is discussed only briefly, and the remaining issues are moot.

## ISSUES

(1) Whether the court improperly applied principles of equitable estoppel in rendering its verdict and improperly refused to consider the conduct of Centax on behalf of the borough from 1997 to the present as being sufficient to imply a change of intent on the part of the borough council. (Statement, items 3, 5 and 7.)

(2) Whether the question of the borough's intent should have been based solely on the "plain language of the ordinance and related documents" rather than on the conduct of the borough during the 14 years after passage of the ordinance. (Statement, items 1 and 2.)

As to the issue of laches (statement, item 6), the court does not recall this being a factor in its decision and the memorandum in support of verdict does not mention it. Laches is applicable only in equity and this case is at law. (It should be noted, however, that the doctrine of equitable estoppel *is* applicable at law, despite its name.) The question of whether or not there is a statute of limitations applicable to a borough's attempt to collect allegedly overdue business privilege taxes does not seem to have been expressly submitted to the court for decision. The borough's complaint, as amended, seeks recovery only for tax years 1991 through 1998, suggesting that it admits that a statute of limitations does apply.

The other issues raised by the borough, whether penalty and interest should have been awarded, and whether counsel fees should have been awarded, are all moot, as the court concluded that defendant had *complied* with the borough's ordinance. The questions of penalties, interest, and attorney's fees were consequently not reached.

## DISCUSSION

### 1. *The Court Properly Applied Principles of Equitable Estoppel in Concluding That the Borough's Long-Standing Interpretation of its Business Privilege Tax Ordinance Could Not Be Changed by Centax*

While the court did not expressly discuss equitable estoppel in its original memorandum, those well-settled principles do apply to scenarios such as the instant one.

Estoppel is an equitable doctrine which acts to preclude one from doing an act differently than the manner in which another was induced by word or deed to expect. In other words, the doctrine protects the reasonable expectations of one who relies on another's course of conduct; it prevents a party from taking a position that is inconsistent with a position previously taken which is disadvantageous to the other. Estoppel arises when one, by his or her acts, representations or admissions, or by his or her silence when he or she ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he or she will be prejudiced if the former is permitted to deny the existence of such facts.

"There are two essential elements to estoppel: inducement and reliance. The party asserting the estoppel has the burden of establishing both points. . . .

*"The fact that the party sought to be estopped is a governmental agency or a creature of government is irrelevant. A municipality, like a private corporation, is subject to the doctrine of estoppel, as is a school district."* 14 Standard Pennsylvania Practice 2d §§79:15, 79:18 (1996), citing *Sullivan v. County of Bucks,* 92 Pa. Commw. 213, 499 A.2d 678 (1985) and *McNelly Appeal,* 122 Pa. Commw. 601, 553 A.2d 472 (1989).

The evidence of WIMCO's "good faith," the admission of which the borough says was erroneous (statement item 5), was proper to show WIMCO's *reliance* on the borough's conduct.

The main question is not whether the ordinance *could* have been interpreted the way Centax did. Rather, the question is whether the *borough,* at or after the passage of the ordinance, interpreted its ordinance the way *Centax* says *all* such ordinances, regardless of language or conduct, *must* be interpreted. It should go without saying that Centax, a corporation appointed to collect the borough's taxes, does not have the authority to change the borough's ordinances. Centax's internal rules and regulations are, at best, *suggested* interpretations of various types of tax ordinances and cannot supersede the borough's specific ordinances nor can they alter the borough's long-term interpretation of its own ordinance.

The audit and updated audit upon which the borough's complaint, as orally amended at trial, is based, failed to consider the exclusion of receipts attributable to interstate commerce *as the borough itself had always in-*

*terpreted it* (as evidenced by the conduct of every person or entity authorized to act for the borough in any way on this subject from 1983 at least through 1995, *i.e.,* by the conduct of the borough's tax administrators, the borough's prior tax collectors, the borough managers, and the borough council.) Instead, the borough's most recent tax collector imposed on WIMCO its own interpretation of *other* rules, not the borough's historical interpretations of the borough's own rules.

We therefore concluded that in the borough of Wilkinsburg, the phrase in the exemption clause, "[r]eceipts . . . attributable to interstate . . . commerce" were always thought to mean the receipts which the borough now attempts to tax. The borough cannot change the legal significance of its *past* conduct based on its *current* tax collector's baseless revision of history. At this late date, the borough may change its own interpretation of its ordinance only by changing the ancillary rules and regulations or by changing the ordinance itself. Such a change would only apply to future tax years. Until the borough takes such steps, it has no lawful basis to go back in time by retroactively changing its mind as it has attempted to do here.

*2. The Credible Evidence Revealed a* Latent *Ambiguity in the Apparently Clear Language of the Ordinance and the Regulations, Requiring the Court, as the Fact-Finder, to Deduce the Borough's Intent on December 27, 1982, From the Conduct of the Parties*

The Pennsylvania Supreme Court, in *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982), dis-

cussed the distinction between patent and latent ambiguities:

" 'A patent ambiguity is that which appears on the face of the instrument, and arises from the defective, obscure, or insensible language used.' Black's Law Dictionary 105 (rev. 4th ed. 1968). In contrast, a latent ambiguity arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous. *Easton v. Washington County Insurance Co.,* 391 Pa. 28, 137 A.2d 332 (1957)." 498 Pa. at 53, 444 A.2d at 663.

For almost 15 years both parties operated on a specific interpretation of the ordinance: that the tax would apply only to one segment of WIMCO's business, the sale of scrap metals between sellers and buyers who were *both* located in Pennsylvania. Neither the borough nor WIMCO perceived any ambiguity because both read the language the same way. It was only with Centax's new interpretation of the ordinance, that the tax should have also applied to transactions where the buyer alone was in Pennsylvania, that the latent ambiguity was recognized. The credible evidence showed the latent ambiguity should be resolved in favor of enforcing the original intent of the borough.

## CONCLUSION

The credible evidence shows that this recent interpretation of the borough's tax is contrary to the borough's prior interpretations and is the result not of the borough's own governmental actions, but rather of the borough's new tax collector's use of its own internal rules and regulations without regard to the borough's

prior policies. The borough's prior conduct is reflective of its *intended* policy when it passed the ordinance. The court's decision was rendered in accordance with the evidence and the law.