671 A.2d 662

**COUNTY OF ALLEGHENY, Appellee,**

v.

**MOON TOWNSHIP MUNICIPAL AUTHORITY, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 1993.

Resubmitted Jan. 11, 1994.

Decided Feb. 16, 1996.

Richard J. Mills, Austin P. Henry, Richard J. Mills & Associates, Pittsburgh, for Appellant.

Ira Weiss, County Solicitor, Allegheny County Law Department, Howard M. Louik, Asst. Solicitor, Pittsburgh, for Appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

We granted review in this matter to determine whether appellant, Moon Township Municipal Authority ("Moon Authority") has the power under the Municipality Authorities Act of 1945 ("Municipal Authorities Act")[1] to convey its Montour Run Water Pollution Control System to appellee, County of Allegheny ("Allegheny County"), pursuant to a written agreement between those parties. Because a municipal authority is empowered to convey any and all property under the Municipal Authorities Act we hold that the Moon Authority was authorized to convey its Water Pollution Control System to Allegheny County and affirm the Commonwealth Court.

In 1970, the Moon Authority[2] completed an engineering study for providing additional sanitary sewage facilities for the Montour Run drainage area which includes the Greater Pittsburgh International Airport.[3] Based upon the study and negotiations between the parties, on August 13, 1970, Moon Authority and Allegheny County entered into a written agreement. The Agreement provided that Moon Authority would design, construct and operate sanitary sewage facilities in the Montour Run drainage area and furnish sewage services to the airport. In return, Allegheny County agreed to provide funding of approximately $450,000 and pay sewage charges on a monthly basis for sewage service for the airport. More significantly, the Agreement also provided that if a new authority for enlarging and operating the sanitary sewage facilities was created by Allegheny County, then Moon Authority would be compelled to convey the existing sanitary sewage

1. 1945, May 2, P.L. 382, No. 164, as amended, 53 P.S. § 301 et seq.

2. Moon Township and its authority are located in Allegheny County.

3. An "Authority" is defined in the Municipal Authorities Act as:
    (a) The term "Authority" shall mean a body politic and corporate, created pursuant to [the Municipal Authorities Act of 1945] or pursuant to the "Municipality Authorities Act of 1935" repealed hereby. 53 P.S. § 302.

facilities including the sewage treatment plant, certain intercepting and main sewers, any capital additions, all rights-of-way, land and other facilities to the new authority. In return for such conveyance, Allegheny County would pay Moon Authority an amount equal to the reproduction cost less depreciation, and all related costs incurred by Moon Authority in the acquisition and transfer. The pertinent language of the Agreement provided:

> ARTICLE XXI. The [Moon] Authority agrees, if an area-wide Authority is created by the County for the purpose of enlarging and/or operating sanitary sewerage facilities, that the [Moon] Authority will convey to the new Authority the facilities of the Moon Authority constructed under this Agreement ... such conveyance to be based upon the payment to the Moon Authority of an amount equal to the reproduction cost less depreciation, and to include payment for all related costs incurred by the Authority in the acquisition and transfer....

The construction of the sanitary sewage treatment facilities was completed in 1973; the facilities are known as the Montour Run Water Pollution Control System ("Montour Run System"). In 1988, with a new "Midfield Terminal" under construction for the airport, Allegheny County adopted a resolution to create a new area-wide authority. Consequently, Allegheny County filed articles of incorporation for the "Allegheny Waste Management Authority" and demanded conveyance of the Montour Run System from Moon Authority pursuant to Article XXI of the Agreement. Moon Authority refused to effectuate the conveyance. Allegheny County filed an equity action in the Court of Common Pleas of Allegheny County seeking specific performance and also filed a motion for partial judgment on the pleadings asserting that the trial court must order the conveyance of the Montour Run System as a matter of law. Moon Authority filed an answer and a cross-motion for judgment on the pleadings asserting that the conveyance was barred by the Municipal Authorities Act and Moon Authority's August 1, 1963, Trust Indenture.

The trial court granted Allegheny County's motion for partial judgment on the pleadings, ordering the conveyance of the Montour Run System and preserved the issue of compensation under the Agreement for trial. Thereafter, at the request of Moon Authority the trial court certified the case for immediate appeal. On appeal, the Commonwealth Court affirmed, holding that Moon Authority's power to sell, lease, transfer, or dispose of "property" is unlimited under the Municipal Authorities Act. The Commonwealth Court ordered that the matter be remanded to the trial court to determine the proper compensation owed to Moon Authority for conveyance of the Montour Run System to Allegheny County pursuant to the terms of the Agreement and directed the trial court to require that the present bondholders be paid in full prior to such conveyance. We granted Moon Authority's petition for allowance of appeal.[4]

The primary issue raised in this appeal is whether Moon Authority has the power under the Municipal Authorities Act to convey its sanitary sewage system to Allegheny County. Moon Authority contends that it is prohibited from conveying the Montour Run System to Allegheny County because the system is a "project" and that under the Municipal Authorities Act, Moon Authority is precluded from selling or transferring a "project" to an entity other than Moon Township. In support of this proposition, Moon Authority raises two arguments. First, Moon Authority argues that 53 P.S. § 317 and § 321 of the Municipal Authorities Act provide the exclusive method by which a project may be conveyed under the Act. Second, Moon Authority contends that the Municipal Authorities Act purposefully differentiates between an authority's power to sell or transfer property as opposed to a project.

■ Generally, §§ 317 and 321 of the Municipal Authorities Act address the transfer of an authority's project to the

4. In reviewing a grant of judgment on the pleadings, an appellate court's scope of review is limited to determining whether the trial court committed an error of law or abused its discretion. *E–Z Parks, Inc. v. Philadelphia Parking Authority,* 110 Pa.Commw. 629, 633, 532 A.2d 1272, 1275 (1987), *appeal denied,* 519 Pa. 656, 546 A.2d 60 (1988).

municipality or municipalities that created the authority. Section 317 provides that an authority may convey its project to the creating municipality or municipalities upon payment and discharge of all of its bonds.

### § 317 Termination of Authority

When any Authority shall have finally paid and discharged all bonds which, together with the interest due thereon, shall have been secured by a pledge of any of the revenues or receipts of a project, it may (subject to any agreements concerning the operation or disposition of such project) convey such project to the municipality or municipalities creating the Authority, or where the project is a public school project to the school district or school districts to which such project was leased.

53 P.S. § 317.

Section 321(A) of the Municipal Authorities Act provides that in the event that the creating municipality or municipalities desire to acquire an authority's project, that the conveyance must be done by appropriate resolution or ordinance.

### § 321. Conveyance by Authorities to municipalities or school districts of established projects

(A) If a project shall have been established under this act by a board appointed by a municipality or municipalities, which project is of a character which the municipality or municipalities have power to establish, maintain or operate, and such municipality or municipalities desire to acquire the same, it or they may by appropriate resolution or ordinance adopted by the proper Authorities, signify its or their desire to do so, and thereupon the Authorities shall convey by appropriate instrument said project to such municipality or municipalities, upon the assumption by the latter of all the obligations incurred by the Authorities with respect to that project.

53 P.S. § 321(A).

Moon Township argues that these sections provide the exclusive manner in which it may convey the Montour Run System. Contrary to Moon Authority's assertion, however,

these sections are applicable only to instances in which an authority's project is being transferred to the municipality or municipalities that actually created the authority. These sections were presumably enacted to preclude a municipality from obtaining title to projects until the authority had entirely paid off its debts, and from assuming responsibility over projects absent a resolution or ordinance indicating the municipality's clear willingness to do so.

Here, Moon Township was the creating municipality. Thus, the preceding statutory language does not control the conveyance of the Montour Run System to Allegheny County.[5] Rather, an authority's power to convey such property is controlled by a different provision of the Act.

█ Under the Municipal Authorities Act an authority is empowered:

(d) to sell, lease as lessor, transfer and dispose of *any property* or interest therein at any time acquired by it. (emphasis added).

53 P.S. § 306 B(d). Thus, as held by our Commonwealth Court sitting *en banc,* the plain and ordinary language of the Municipal Authorities Act specifically authorizes a municipal authority to convey any and all property without limitation.[6] 53 P.S. § 306 B(d). If the legislature intended to limit an authority's power to convey its property it would not have used such expansive language. Moreover, this Court has recognized instances in which an authority's waterworks project was sold to another authority. *See Burke v. North Huntingdon Township Municipal Authority,* 390 Pa. 588, 136 A.2d 310 (1957) (relating to the sale of North Huntingdon

5.  53 P.S. § 317 provides that the conveyance of an authority's project to the creating municipality or municipalities is "(subject to any agreements concerning the operation or disposition of such project)." 53 P.S. § 317. Hence, § 317 evidences an authority's power to enter into agreements for the sale or transfer of its property including projects under the Municipal Authorities Act.

6.  53 P.S. §§ 317 and 321 would of course govern instances in which a project was to be conveyed to the creating municipality or municipalities.

Township Municipal Authority's water works project to the Municipal Authority of Westmoreland County).

■ Moon Authority's second argument is that the Municipal Authorities Act purposefully differentiates between an authority's power to convey "property" as opposed to a "project". Specifically, Moon Authority contends that although an authority is permitted to convey real property without limitation under 53 P.S. § 306 B(d), an authority is not permitted to convey a "project" such as a sanitary sewer system without limitation since the Municipal Authorities Act only expressly allows for the purchase and not the sale or transfer of "projects" under 53 P.S. § 306 B(e).[7] Relying on the rule of statutory construction *expressio unius est exclusio alterius* (the inclusion of one thing indicates an intent to exclude the other), Moon Authority suggests that the legislature intended to preclude the sale of projects by an authority under the Municipal Authorities Act. However, such a strict reading of the Municipal Authorities Act would require that § 306 B(d) be ignored in its entirety. This we will not do. It is well established that when determining the meaning of a statute, we must assume that the intent of the General Assembly was not to produce an absurd or unreasonable result. 1 Pa.C.S. § 1922(1). Moreover, practical results of a particular interpretation may be considered when examining the meaning of a statute. *Lehigh Valley Cooperative Farmers v. Commonwealth, Bureau of Employment Sec. etc.*, 498 Pa. 521, 526, 447 A.2d 948, 950 (1982); 1 Pa.C.S. § 1921(c)(6). To prevent an authority from selling projects when it can clearly sell property would inevitably cause havoc upon our local governments. In particular, such an interpretation would prevent an authority which is experiencing financial difficulties or is threatened with bankruptcy from selling off portions of its property or its entire project in order to improve its fiscal position or to meet its bond obligations. This is clearly not a consequence that

7. Section 306 B(e) provides that an authority may:
   (e) acquire by purchase, lease or otherwise, and to construct, improve, maintain, repair and operate projects. 53 P.S. § 306 B(e).

the legislature intended and is not a position that this Court is willing to take under the guise of such a strict interpretation.

■ Moreover, the principles of equity do not permit Moon Authority to escape its accountability under the parties Agreement. To reach another conclusion would be nothing less than egregious. This is particularly relevant in light of the fact that Moon Authority and Allegheny County bargained for and entered into a contract which provided that Allegheny County was entitled to the Montour Run System in the event that the County needed to expand the sanitary sewage system in that region. Furthermore, Allegheny County provided a significant amount of consideration (nearly a half of a million dollars in 1970 plus an agreement to pay a monthly service fee) to help build the very sanitary sewage facilities that Moon Authority now wishes to maintain as its own. The Montour Run System itself perhaps would never have been built without the funds provided by Allegheny County and the Agreement most likely would never have been entered into but for the stipulation that Moon Authority would convey the property to Allegheny County. We should not have to remind Moon Authority that the statutory language which it now relies upon in order to avoid their contractual obligation was, in fact, enacted well before this Agreement was reached. Moreover, as previously stated, an authority is specifically empowered to sell, lease or transfer *any* property without limitation. This obviously would include, *inter alia*, the system's sewage treatment plant, intercepting and main sewers lines, rights-of-way and any real property.[8]

Moon Authority also claims that the Commonwealth Court misapprehended the requirements of Moon Authority's Trust Indenture[9] of 1963. Moon Authority argues that the 1963 Trust Indenture, in existence before the 1970 Agreement at

**8.** The Statutory Construction Act defines property as:
 "**Property.**" Includes both real and personal property. 1 Pa.C.S. § 1991.

**9.** Pursuant to the Municipal Authorities Act, an authority is authorized to enter into a trust indenture in order to secure its bondholders' investment. 53 P.S. § 307 C.

issue, requires that the Authority receive authorization from its consulting engineer that the sale is in the best interest of the Authority before it can sell its property. Moon Authority's Trust Indenture states in relevant part:

No sale or other disposition of fixed properties having a value in excess of Five Thousand Dollars ($5,000.00) shall be made unless the Consulting Engineer shall first have filed his certificate with the Authority and the Trustee recommending such sale or other disposition of said fixed properties and shall have stated in such certificate that the sale or other disposition of said properties is in the best interest of the Authority and will not impair the security of the bonds and the retention of said properties is not necessary for the efficient operation of the Water and Sewer System.

■ Moon Authority contends that its consulting engineer does not believe that the sale is in the best interest of the Authority. Moon Authority also asserts that the Commonwealth Court's order requiring that the engineer file the certificate required by the Trust Indenture would violate the ethical standards of his profession. However, aside from making the bald assertion that its own consulting engineer believes that the conveyance would not be in the best interest of the authority, Moon Authority fails to demonstrate how the sale would impair the rights of the bondholders or how it would adversely affect the efficient sanitary sewage services in Moon Township or in the region. To the contrary, by acquiring the Montour Run System, Allegheny County would be able to provide effective sewage services for the entire region including Moon Township, other municipalities and the International Airport. In fact, this was the very reason that the parties entered into this Agreement in the first place.

Furthermore, as the Commonwealth Court correctly points out, the Agreement between the parties was entered into seven years after the Trust Indenture was created. Thus, the terms of the Agreement, including the possible conveyance of the property over to Allegheny County, were entered into with the full knowledge of the requirements of the Trust Indenture. Any attempt now to avoid accountability under the Agreement

through the terms of the Trust Indenture would only infer that Moon Authority entered into the contract in bad faith.

Finally, we note that the Trust Indenture's requirement that its consulting engineer file a certificate approving of the sale in question is intended to protect the rights of its bondholders. In this regard, the order of the Commonwealth Court requires that the present bondholders must be paid in full prior to the conveyance at issue. Thus, the bondholder's rights are clearly protected.

For the reasons stated above, the order of the Commonwealth Court is hereby affirmed.