**TOWNSHIP OF FORKS**

v.

**FORKS TOWNSHIP MUNICIPAL SEWER AUTHORITY.**

**Forks Township Municipal Sewer Authority**

v.

**Forks Township.**

**Forks Township Municipal Sewer Authority, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 12, 1999.
Decided Sept. 7, 2000.

Charles S. Smith, Easton, for appellant.

Karl H. Kline, Easton, for appellee.

Before: McGINLEY, Judge, FLAHERTY, Judge and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Forks Township Municipal Sewer Authority (Authority) appeals from an order of the Court of Common Pleas of Northampton County (trial court) dissolving a preliminary injunction and requiring the Authority to comply with certain resolutions of Forks Township (Township). We affirm in part and vacate and remand.

The Township created the Authority in 1965 under the Municipal Authorities Act of 1945(Act), Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §§ 301–322. In 1969, the Authority issued tax-exempt municipal bonds and built the sewer system. On February 5, 1998, the Township adopted a series of resolutions (the Resolutions) which collectively compel the Authority to pay off all its outstanding indebtedness, to transfer the municipal sewer system, its assets, other property and records (Project) to the Township and to dissolve the

Authority for the purpose of acquiring full and complete ownership of the Project.[1]

On March 5, 1998, the Authority filed a declaratory judgment action against the Township in the trial court, requesting the trial court to determine the legality of the Resolutions. On March 9, 1998, the Authority requested a preliminary injunction to prevent the Township from enforcing its Resolutions. The trial court granted the preliminary injunction until the merits of the case were decided.

On April 8, 1998, the matters were consolidated by the trial court. On April 15, 1998, the Township filed an action in mandamus seeking an order to compel the Authority to comply with the Resolutions. The trial court conducted a non-jury trial on the merits on July 27, 1998. On October 2, 1998, the Court entered an Adjudi-

---

1. The resolutions at issue are the following:

**No. 980205–1:**
Forks Township Municipal Sewer Authority shall immediately take all necessary action to pay off all its outstanding indebtedness, with interest due thereon, redeem all its outstanding bonds, as defined in the January 15, 1969 Trust Indenture, and settle all other claims which may be outstanding against it, all to be accomplished no later than March 17, 1998.

**No. 980205–2:**
Forks Township Municipal Sewer Authority shall immediately take all necessary action to deposit sufficient funds with the Trustee under the Trust Indenture in order to redeem all Outstanding Bonds no later than March 17, 1998.

**No. 980205–3:**
Forks Township Municipal Sewer Authority shall immediately notify the Trustee under the Trust Indenture of the Authority's intent to redeem all Outstanding Series of 1969 Sewer Revenue Bonds, so that Trustee can immediately prepare the appropriate redemption notice.

**No. 980205–4:**
Forks Township Municipal Sewer Authority shall prepare and execute an inventory of all assets of Authority and turn over control of any and all bank accounts and funds in its possession or control to Township no later than March 5, 1998. Forks Township Municipal Sewer Authority shall then promptly convey all of its documents and records and all of its remaining assets and property to Township by appropriate documents in form acceptable to Township, to be accomplished no later than March 17, 1998. Documents and records include, but are not limited to, all contracts, studies, plans correspondence, letters of credit, financial records and drawings in Authority's possession or owned by Authority.

**No. 980205–5:**
Forks Township Municipal Sewer Authority is prohibited from taking any action or expending any funds related to the expansion of the sewer system.

**No. 980205–6:**

Forks Township Municipal Sewer Authority shall cooperate with Township to the fullest extent possible, so that the transition in the ownership, control and operation of the Forks Township sanitary sewer collection system can be expeditiously accomplished without any adverse impact to any creditors, to the bondholders, or to the citizens of Fork Township.

**No. 98020205–7:**
Forks Township Municipal Sewer Authority is prohibited from engaging in any conduct or expending any money, directly or indirectly, for any purpose other than accomplishing the directives and objectives of the Township as set forth in Resolutions 980205–1 through 980205–11.

**No. 980205–8:**
Forks Township Municipal Sewer Authority is expressly prohibited from taking any action or expending any funds, directly or indirectly, for the purpose of challenging the right of Township to take the actions set forth in Resolutions 980205–1 through 980205–11.

**No. 980205–9:**
It is the intent of Township that Township shall not assume any debt as a result of any of the provisions of Resolutions 980205–1 through 980205–11.

**No. 980205–10:**
The responsibility for updating and implementing the Township's Act 537 Sewage Facilities Plain shall be exclusively under the control and jurisdiction of Township. Forks Township Municipal Sewer Authority shall have no responsibility for updating or implementing the Township's Act 537 Sewage Facilities Plan, effective immediately.

**No. 980205–11:**
All funds and assets required by the foregoing resolutions to be turned over by Authority to Township shall be held and utilized by Township in connection with the operation, maintenance, improvement and future expansion of the Forks Township sanitary sewer system.

Main Brief For Appellant, Adjudication, pp. 27–29.

cation including Findings of Fact and Conclusions of Law and Order of Court in favor of the Township against the Authority dissolving the preliminary injunction, denying the request for declaratory judgment and granting the Township's request for mandamus authorizing the enforcement of the Resolutions.

The trial court then granted the Authority a stay of its orders, pending the disposition of the appeal of this matter by the Authority.

Important to the disposition of this case are the underlying facts found by the trial court:

## II. *Findings of Fact*

4. The purpose of the establishment of the Authority was for the acquisition and construction of a complete sanitary sewage collection system which would provide sewage service in certain portions of the Township.

5. In order to finance construction of the system, the Authority sold approximately $2,600,000.00 in municipal sewer revenue bonds in 1969. These bonds are bearer bonds and are secured by a trust indenture executed by the Authority.

6. Under the trust indenture, Easton National Bank and Trust Company is named the trustee. As a result of various mergers that trustee is now First Union National Bank.

7. Approximately $950,000.00 of sewer revenue bonds are currently outstanding.

8. To derive monies to pay the bonds, the Authority entered into an Agreement of Lease ('Lease') with the Township. Under that Agreement, the Township leased the sewer system from the Authority.

9. Pursuant to the Lease, the Township is required to pay the Authority sufficient funds for its operation. A portion of these funds are used to pay interest, principal and costs on the outstanding bonds.

10. Under the lease, the Township is responsible for the operation and maintenance of the sewer system. Under Section 9.02 of the trust indenture, the Authority covenanted that it would cause the Township to maintain the sewer system in good repair, continuously operate the same and make all necessary repairs, replacements and improvements to maintain adequate service. The Township is also responsible for collection of sewer revenues, including user charges from owners of improved real property in the Township, who are connected to the system.

12. [Sic] On July 10, 1991, the Authority incurred an obligation to pay $552,000.00 to the Tatamy Borough Sewer Authority. Under a written agreement with Tatamy Borough Sewer Authority, the Authority purchased 70 percent capacity in Tatamy's sewer interceptor payable in annual payments of $3,307.00 amortized at a rate of one percent interest over 20 years.

13. The Authority has in excess of $2,000,000.00 in liquid assets, which are more than enough to retire its outstanding debt.

14. The Township is contemplating a zoning ordinance change to which the Authority objects. The Township became concerned that the Authority was going to institute litigation against the Township in order to enforce provisions of both the Lease and the trust indenture that the Authority felt were violated by the proposed ordinance.

Main Brief for Appellant, Adjudication, pp. 31–33.

■ The Authority raises the following issues for our review.[2]

---

**2.** Our scope of review of declaratory judgment actions and actions in mandamus is limited to determining whether the trial court committed an error of law or abused its discretion, and whether substantial evidence exists to support its findings. *Vernon Township*

1. By leasing the sewer system owned by the Authority for a term not to expire until December 31, 2008, has the Township waived its power under the Municipal Authorities Act to dissolve the Authority? The trial court answered in the negative.

2. Does the Authority have an absolute property right in the sewer system under the Lease which cannot be defeated by the Township's Resolutions to dissolve the Authority? The trial court answered in the negative.

3. Can the Township avoid its obligations under the Lease in the bond issue by dissolving the Authority? The trial court answered in the affirmative.

4. Where the Authority's outstanding bonds are bearer bonds, and the Trust Indenture requires the Authority to take all steps, including legal action, to enforce the Lease and protect the interest of bond holders, can the interest of the bond holders be defeated by the Township ordering all bonds to be paid prematurely? The trial court answered in the affirmative.

5. Do the Resolutions ordering the Authority to pay off all bonds and debts and prohibiting the contesting of or spending funds to contest the legality of the Resolutions and ordering all assets to be turned over to the Township violate the Authority's sovereignty and independent status? The trial court answered in the negative.

The basic question is, however, does the Township have the authority under the law and the contract documents (the Trust Indenture and Lease) to order the Authority it created to dissolve itself.[3]

■ Section 14 and Section 18A of the Act (Sections 14 and 18A) govern the termination of the Authority. Section 14 has been held to authorize the Township, as the creating municipality, to take over the Project pursuant to Section 18A after the impediments of Section 14 in the form of agreements, claims and outstanding debt obligations (the Bonds) are discharged. *Forward Twp. Sanitary Sewage Authority v. Twp. of Forward*, 654 A.2d 170 (Pa. Cmwlth.1995).[4] Section 18A authorizes the Township to acquire a project after assuming all obligations related thereto. The Township created the Authority and, under Section 18(A) of the Act, it has the power, without the consent of the Authority, to order the Authority to comply with the Township's Resolutions to pay off all Bonds and debt, convey all of its assets and dissolve the Authority.[5] *Id.*

*Water Authority v. Vernon Township*, 734 A.2d 935, 937 (Pa.Cmwlth.1999).

3. The Trust Indenture is the contract between the Trustee for the bondholders and the issuer of the bonds, in this case, the Authority. The Township is not a party to the Indenture.

4. Section 14 states:
   When any Authority shall have finally paid and discharged all bonds which, together with the interest due thereon, shall have been secured by a pledge of any of the revenues or receipts of a project, it may (subject to any agreements concerning the operation or disposition of such project) convey such project to the municipality of municipalities creating the Authority.... When any Authority shall have finally paid and discharged all bonds issued and outstanding and the interest due thereon, and settled all other claims which may be outstanding against it, it may convey all its property to the municipality or municipalities....
   53 P.S. § 317.

5. Section 18(A) provides:
   If a project shall have been established under this act by a board appointed by a municipality or municipalities, which project is of a character which the municipality or municipalities have power to establish, maintain or operate, and such municipality or municipalities desire to acquire the same, it or they may by appropriate resolution or ordinance adopted by the proper Authorities, signify its or their desire to do so, and thereupon the Authorities shall convey by appropriate instrument said project to such municipality or municipalities, upon the assumption by the latter of all obligations incurred by the Authorities with respect to that project.

The Authority insists that it has an absolute property right which cannot be defeated by the Township's Resolutions to dissolve the Authority. The Resolutions, however, provide that the Authority must immediately discharge all of its indebtedness thereby eliminating the conditions precedent to an involuntary dissolution set forth in Sections 18 and 14. The Authority has, therefore, only a conditional right in the project, not an absolute one. In *Forward*, the township enacted resolutions to dissolve the authority, directed the authority to convey all of its property to the township and to retire an outstanding loan where the bank had waived prepayment restrictions. This Court affirmed an order of mandamus that the *Forward* project could be conveyed because 1) Section 18A authorized the Township to unilaterally acquire the property of an Authority, 2) the bank was not a bondholder and, thus, there was no impediment with respect to a bond issue and 3) the bank agreed to prepay the loan. Authority attempts to distinguish *Forward* because there were no outstanding bonds there subject to a trust indenture, as in the case *sub judice*. *Forward* establishes, however, that the creating municipality has the power to dissolve its authority under Section 18A once the impediments of Sections 14 and 18 are removed, particularly the discharge of all indebtedness, regardless of its character. Under the Act, the power to dissolve includes the power to order the Authority, prior to dissolution, to remove legally removable impediments, such as, the bank note in *Forward* and, here, the Tatamy obligations, other indebtedness and the Bond issue which is subject to an early redemption call by its own Indenture.

The Authority further argues that this Court did, however, find in *County of Mifflin v. Mifflin County Airport Authority* that where that authority held two outstanding bond issues with trust indentures, the county's obligations pursuant to the issuance of those bonds limited the county's rights to acquire the project.[6] In *Mifflin*, however, the County attempted to assume the bond obligations despite the covenants in the indenture which stated that the County's right to acquire the assets of the Authority were limited to the Authority's failure, neglect or cessation of operation of the airport and other provisions which rendered "doubtful at best the legal power of the Authority to operate the airport." The County's takeover attempt was defeated. The County's takeover attempt was also held not to be within the purview of the Local Government Unit Debt Act (LGUDA) which required much more than a mere County resolution to comply with the statutory procedure for adding to municipal debt.[7] In the case *sub judice*, there are no similar anti-takeover covenants here and the Resolution specifically states that the Township will not assume any of Authority's debt so there is no problem with LGUDA. There is also authority in this Indenture to redeem the Bonds prematurely and there are sufficient liquid assets owned by the Authority which permit the Authority to pay off the Bonds and debts prior to conveying the Project and thereby avoid the impediments of the *Mifflin* bonds.

The Authority contends that the Resolutions directing the Authority to pay all the debts, to redeem all the bonds, and to forbid the Authority to contest or spend any funds to contest the legality of Resolutions are in derogation of a long line of cases holding that authorities are not the child of the creating municipality, but are an independent body, part of the sover-

---

53 P.S. § 321(A).

6. *Mifflin*, 63 Pa.Cmwlth. 56, 437 A.2d 781 (1981).

7. LGUDA, 53 P.S. §§ 6780–1 through 6780–609, which was in effect when *Mifflin* was decided, was subsequently repealed by the Act of December 19, 1996, P.L.1158, No. 177, § 2(a) and substantially re-enacted with the same short title by the same Act of December 19, 1996, P.L.1158, No.177, § 1, 53 Pa.C.S. §§ 8001 through 8271.

eignty of the Commonwealth. The sovereignty of the Authority is, however, like other governmental entities created by statute, subject to termination under certain conditions by the very Act authorizing its creation.

■ Sections 18A and 14 of the Act, when read together in conjunction with *Forward* and *Mifflin,* control this matter and lead to the inescapable conclusion that for the purpose of dissolving an authority a municipality has the power to unilaterally direct its authority to transfer authority property without the consent of the authority *provided* however, that no impediment exists at the time of conveyance in the form of a trust indenture of a bond issue or other indebtedness and the authority is not foisting its debts upon the municipality without its consent. *Forward.* The Indenture here permits the premature redemption of the Bonds by the Authority which now merely has to direct the Trustee to do so, thereby removing the impediments of Sections 14 and 18. The Township has no impediment to causing the dissolution of the Authority after insuring the discharge of all indebtedness, particularly the redemption and payment in full of the bondholders by the Trustee upon direction by the Authority.

■ The Authority agrees that it has assets in excess of its Bonds and debt but the Authority contends that the excess funds are needed for an expansion of the sewer system which was mandated by the Pennsylvania Department of Environmental Resources (DPE) to provide sewers for 110 homes along the Delaware River. The Authority argues that if the bonds and debt are paid off and the proposed Zoning Ordinance is adopted, that insufficient funds will remain to construct the ordered expansion project because future tapping fees will no longer be available through sewer extensions to help pay for the project. The agreement (to which the Township is also a party) with the Tatamy Borough Sewer Authority is also raised as another impediment. It is important to note, however, that there are sufficient monies in the Sinking Fund to also pay Tatamy along with the outstanding Bonds.[8] The Authority's complaint that it will then have insufficient funds to construct the expansion it desires is a fear without foundation. The Township contends that it is considering an alternative proposal to tear down all 110 houses in order to make a park. Since we hold that the Township will be the sole surviving entity governing the Project after the dissolution, it follows that the Township has implied power to order the Authority not to expand in the meantime as part of the dissolution process because, thereafter, the Township will necessarily have to make the decisions on expansion and how to satisfy the mandate of DPE. DPE's mandate and the Authority's expansion plans do not, therefore, pose any impediment to dissolution.

■ The Authority contends that the Indenture permits only the Authority, at its option, to redeem any or all of the Bonds prior to maturity. Authority argues that the interests of the bondholders will be defeated by the Township ordering the Authority to prematurely pay off the Bonds. Although bondholders may not be pleased with the early redemption call, particularly if it happens to be made in an adverse market, they have been placed on notice of that possibility by the Indenture. In fact, an authority usually pays a price for an early redemption provision in the bonds because the bond buyers discount the original price the bondholder pays the authority for the bond. The bondholder's rights are not, therefore, violated by the Authority carrying out the early redemption mandate of the Resolutions.

■ The Authority further argues that although the Indenture permits the Au-

---

8. The outstanding bond indebtedness is approximately $950,000, the debt to Tatamy is less than $500,000 and there is in excess of $2 million in the Sinking Fund available. Findings of Fact 7 and 13.

thority to redeem the Bonds at any time, the identity of the bondholders is unknown because the Bonds are bearer bonds and the Bonds do not provide that the Township can order the redemption of the Bonds. The redemption of bearer Bonds is only a problem for the Trustee, however, not the Authority, so long as the Authority is not required to convey property or dissolve prior to the Bonds being paid off. Unfortunately, under the current state of the Resolutions, it may not be possible for the Trustee to redeem the Bonds in accordance with the Resolutions in view of the restrictive deadlines (five weeks) which have now passed. It is, therefore, necessary for the trial court to rewrite the order of mandamus on remand to insure that the Trustee completely executes the paying off of the bearer Bonds before any property is conveyed to the Township.

■■■ The Authority argues that under the Lease, along with other covenants, all rentals are to be paid to the Authority without suspension or abatement. The Authority contends that the Township has continually violated its obligations under the Lease, which prohibits the Township from permitting competing wastewater treatment facilities and requires the Township to pay all of the user fees over to the Authority. By causing the Authority to dissolve itself, the Township is not avoiding its obligations to the Authority under the Lease, however, because the Lessee Township will not be bound to the Lease after the Township acquires all of the property of the Lessor Authority. As correctly pointed out by the trial court, the Leasehold created by the Lease under the Bond Indenture then becomes the property of the Township Lessee and would terminate by operation of law there-

by eliminating the need for any injunction regarding future violations of the lease by Township.

■■■ The Authority contends that whatever rights the Township had to dissolve the Authority under the Act were waived when it entered into the covenants in the Lease to operate, maintain and pay for the sewage system until December 31, 2008. The Authority also contends that section 14 of the Municipal Authorities Act prevents the Township from dissolving the Authority because this section provides that any attempt to dissolve the Authority is subject to outstanding agreements regarding disposition of the project and thus, the Lease creates an impediment to dissolution. Here, the Authority has sufficient funds not only to pay off the outstanding bonds as authorized by the Indenture merely by directing the Trustee to prematurely redeem but the Authority also has sufficient funds to pay off all other outstanding debts. The Township did not waive its right to dissolve the Authority by signing the Lease but only agreed, in effect, not to exercise its right to dissolve the Authority until after Authority, voluntarily or involuntarily, made provisions for the prior discharge of all authority debt and other obligations.

■■■ The Authority correctly contends, however, that the rights of the bondholders are violated by Resolution No. 980205–8 which expressly prohibits the Authority from challenging the Resolutions which affect their rights. The Authority is bound by the Indenture and, under the Indenture, the Authority must take all necessary actions to protect the interests of the bondholders.[9] It would be against public

---

9. Section 9.03 of the Indenture reads:

The Authority covenants that so long as any Sewer Revenue Bonds shall remain Outstanding it will require the Township to pay all rentals and other sums payable by it under the Lease; that it will require the Township to observe faithfully all its covenants and agreements under the Lease; and that if the Township shall fail to make such

payments or to observe such covenants and agreements, it will institute and prosecute all legal proceedings appropriate for protection of Holders of Sewer Revenue Bonds.

. . . .

A. The Authority shall have the right and duty to . . . take all actions that are necessary or desirable and which are not in-

policy to permit a municipality to create an apparently autonomous Authority to sell bonds protected by an indenture containing covenants which rely solely on the credit and good faith of the issuing authority and then have the municipality, as a nonparty to the bond obligations, capable of prohibiting the bond issuing authority from exercising its discretion to enforce a covenant compelling the taking of legal action which the authority deems necessary to protect the interests of the bondholders. Such a license to legally muzzle and handcuff the Bond issuing Authority here could jeopardize the credit of all authorities created for the purpose of issuing bonds by destroying potential bond buyer's preference for bonds sold by Pennsylvania municipal authorities.

There is an expectation by bond buyers that the Pennsylvania courts will uphold the contractual obligations to which its municipalities and their authorities commit in order to receive bond proceeds. Bond buyers are relying upon the covenants in the Indenture to be enforced by the Trustee and the Authority, as issuer of their bonds in the courts of Pennsylvania, particularly those involving the payment of interest and principal on their bonds. If a third party, like the Township, not bound by the Indenture can prohibit the Authority from contesting Resolutions directly affecting the payment of interest and principal, bond buyers would lose confidence in the enforcement provisions which provide security for their bonds. In addition, insurance companies may not issue insurance on municipal authority bonds under those circumstances. Prohibiting the Authority to enforce a covenant in the Indenture would jeopardize the ability of many other authorities and municipalities to raise needed capital project revenues by issuing municipal bonds. The order of mandamus must, therefore, be vacated in regard to Resolution 980205-8.

consistent with the Lease or this Indenture to protect interests of the Authority and

In summary, the trial court was correct in holding that the Township could order the Authority to pay off all its outstanding indebtedness and claims against it and deposit sufficient funds with the Trustee to redeem all outstanding Bonds. The Court's order granting mandamus, however, must be vacated for several reasons. First, the deadline in the Resolutions for such action is now obsolete. Second, there is no evidence in the record that the Resolution's allocation of a five-week deadline (previously February 8 to March 17) to the Authority for redeeming the Bonds will be sufficient. The deadline for paying off the other outstanding debts and claims may not be a problem but the lack of identity of the owners of the outstanding bearer Bonds may necessitate a longer redemption period for the Trustee of the Bonds. Third, the Trustee of the Bonds is not a party to this action, is not bound by the trial court's order and, if the Authority is forced by the mandamus order to direct the Trustee to obey the covenant of redemption, impossibility of performance by the Authority may result because of an unrealistic deadline in the Resolutions. The Trustee is only bound by the Indenture, its fiduciary duty to the bondholders and its contractual duties to the Authority including here, the duty to redeem upon a reasonable order of the Authority. Fourth, Resolution No. 980205-8 must be excluded from the order of mandamus for reasons above given.

It is, therefore, necessary that on remand that the order of mandamus schedule the Resolutions leading to the dissolution of the Authority in chronological order in a manner which will ensure that, in addition to prohibiting the expansion of the Project, the Authority will immediately order the Trustee to redeem the outstanding Bonds as soon as possible, will deposit sufficient funds with the Trustee to do so and will pay off all its other outstanding claims, indebtedness and obligations.

Holders of Sewer Revenue Bonds with respect to the Lease.... R.R. 173a, 174a.

Then, and only then, when the Authority has completely discharged all debt and requested and received proof thereof on the Bond issue in the form of a written certification from the issuing Bond Trustee and any subsequent Trustee, shall the Authority be ordered to immediately convey the Project to the Township and thereafter, immediately dissolve itself in accordance with Section 14.

The order of the trial court is affirmed in dissolving the preliminary injunction and denying the Authority's request for declaratory judgment but the order of mandamus enforcing the Resolutions is vacated and remanded for further proceedings consistent with this opinion.

### ORDER

AND NOW, this 7th day of September, 2000, the order of the trial court is affirmed in part, vacated in part and remanded. Insofar as the order dissolves the preliminary injunction and denies the Authority's request for declaratory judgment, the order is affirmed. The remainder of part "3" of the trial court's order granting the mandamus to compel the Authority to comply with the Resolutions is VACATED and the matter remanded to the trial court to issue a more specific order in accordance with this Opinion excluding Resolution 980205–8 and requiring the Authority to comply with the Resolutions in a manner that will insure that the Authority will not convey any of its property or dissolve until 1) all debts have been paid; and 2) written certification is received by the Authority from the Trustee for the outstanding bond issue that the public indebtedness has been retired to the satisfaction of the issuing Trustee and any subsequent Trustee.

Jurisdiction relinquished.