**[J-42A-2025, J-42B-2025, J-42C-2025, J-42D-2025, J-42E-2025, J-42F-2025, J-42G-2025 and J-42H-2025] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| IN RE: CHESTER WATER AUTHORITY TRUST | : | No. 46 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 489 CD |
| APPEAL OF:  CHESTER WATER AUTHORITY | : | 2020 dated September 16, 2021 |
| | : | Reversing the Order of the Delaware |
| | : | County Court of Common Pleas, |
| | : | Orphans' Division, at No. 217-2019- |
| | : | O dated April 24, 2020 and |
| | : | Remanding |
| | : | |
| | : | ARGUED:  May 14, 2025 |

| | | |
|---|---|---|
| IN RE: CHESTER WATER AUTHORITY TRUST | : | No. 47 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 504 CD |
| APPEAL OF: CHESTER WATER AUTHORITY | : | 2020 dated September 16, 2021 |
| | : | Reversing the Order of the Delaware |
| | : | County Court of Common Pleas, |
| | : | Orphans' Division, at No. 0217-2019- |
| | : | O dated April 24, 2020 and |
| | : | Remanding |
| | : | |
| | : | ARGUED:  May 14, 2025 |

| | | |
|---|---|---|
| CITY OF CHESTER | : | No. 48 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Commonwealth Court at No. 514 CD |
| | : | 2020 dated September 16, 2021 |
| | : | Reversing the Order of the Delaware |
| CHESTER WATER AUTHORITY NICOLE WHITAKER, WANDA MANN, MICHELLE CONTE, TYLER THERRIAULT, ESQUIRE, KATHRYN A. TOWNSEND, VICTOR S. MANTEGNA, JAMES D. NEARY, DIANE AND JAMES BOHR AND WOLF EQUITY, L.P. | : | County Court of Common Pleas, |
| | : | Civil Division, at No. CV-2019- |
| | : | 005976 dated April 24, 2020 and |
| | : | Remanding. |
| | : | |
| | : | ARGUED:  May 14, 2025 |
| | : | |
| | : | |

|  |  |  |
|---|---|---|
| APPEAL OF:  CHESTER WATER AUTHORITY | : | |
| | : | |
| IN RE:  CHESTER WATER AUTHORITY TRUST | : | No. 49 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 685 CD |
| APPEAL OF:  CHESTER WATER AUTHORITY | : | 2020 dated September 16, 2021 |
| | : | Reversing the Order of the Delaware |
| | : | County Court of Common Pleas, |
| | : | Orphans' Division, at No. 0217-2019- |
| | : | O dated April 24, 2020 and |
| | : | Remanding. |
| | : | |
| | : | ARGUED:  May 14, 2025 |
| | : | |
| IN RE: CHESTER WATER AUTHORITY TRUST | : | No. 50 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 489 CD |
| CROSS APPEAL OF: CHESTER COUNTY | : | 2020 dated September 16, 2021 |
| | : | Reversing the Order of the Delaware |
| | : | County Court of Common Pleas, |
| | : | Orphans' Division, at No. 217-2019- |
| | : | O dated April 24, 2020 and |
| | : | Remanding. |
| | : | |
| | : | ARGUED:  May 14, 2025 |
| | : | |
| IN RE: CHESTER WATER AUTHORITY TRUST | : | No. 51 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 504 CD |
| CROSS APPEAL OF: CHESTER COUNTY | : | 2020 dated September 16, 2021 |
| | : | Reversing the Order of the Delaware |
| | : | County Court of Common Pleas, |
| | : | Orphans' Division, at No. 0217-2019- |
| | : | O dated April 24, 2020 and |
| | : | Remanding. |
| | : | |
| | : | ARGUED:  May 14, 2025 |
| | : | |
| CITY OF CHESTER | : | No. 52 MAP 2022 |
| | : | |
| | : | |
| | : | |

| v. | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 514 CD |
| | : | 2020 dated September 16, 2021 |
| CHESTER WATER AUTHORITY NICOLE | : | Reversing the Order of the Delaware |
| WHITAKER, WANDA MANN, MICHELLE | : | County Court of Common Pleas, |
| CONTE, TYLER THERRIAULT, ESQUIRE, | : | Civil Division, at No. CV-2019- |
| KATHRYN A. TOWNSEND, VICTOR S. | : | 005976 dated April 24, 2020 and |
| MANTEGNA, JAMES D. NEARY, DIANE | : | Remanding. |
| AND JAMES BOHR AND WOLF EQUITY, | : | |
| L.P. | : | ARGUED:  May 14, 2025 |
| | : | |
| | : | |
| | : | |
| CROSS APPEAL OF:  CHESTER COUNTY | : | |
| | | |
| IN RE:  CHESTER WATER AUTHORITY | : | No. 53 MAP 2022 |
| TRUST | : | |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 685 CD |
| CROSS APPEAL OF:  CHESTER COUNTY | : | 2020 dated September 16, 2021 |
| | : | Reversing the Order of the Delaware |
| | : | County Court of Common Pleas, |
| | : | Orphans' Division, at No. 0217-2019- |
| | : | O dated April 24, 2020 and |
| | : | Remanding. |
| | : | |
| | : | ARGUED:  May 14, 2025 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE MUNDY**                    **DECIDED:  January 21, 2026**

We granted allowance of appeal to consider whether the City of Chester (City) has the right to seize the assets of Chester Water Authority (Authority), a municipal authority that the City created and incorporated, under Section 5622(a) of the Municipal Authorities Act (MAA), 53 Pa.C.S. §§ 5601-23, which provides:

> **(a) Project.—**If a project established under this chapter by a board appointed by a municipality is of a character which the municipality has power to establish, maintain or operate and the municipality desires to acquire the project, it may by appropriate resolution or ordinance adopted by the proper

> authorities signify its desire to do so, and the authorities shall convey by appropriate instrument the project to the municipality upon the assumption by the municipality of all the obligations incurred by the authorities with respect to that project.

53 Pa.C.S. § 5622(a).

I join the portion of the Majority Opinion concluding that this Court's statements in *Burke v. North Huntingdon Township Municipal Authority*, 136 A.2d 310 (Pa. 1957), that an authority has the power to initiate a Section 5622(a) conveyance, were dicta. I further agree with the Majority that an authority does not play a role in the decision to initiate or approve a conveyance under Section 5622(a), and that Section 5622(a) is not ambiguous. However, I dissent to the Majority's holding that the City, as the sole municipality creating and incorporating the Authority, does not have the present ability under the MAA to acquire the Authority's projects. Contrary to the Majority's conclusion, the unambiguous language of the MAA, specifically Sections 5619(a) and 5622(a), plainly provides that the City continues to have the power to establish, maintain, or operate the Authority's projects regardless of the composition of its governing body.

For purposes of this dissent, I highlight the following facts and procedural history. The City alone incorporated the Authority in 1939, and the City renewed the Authority's charter in 1965 and 1998. The Authority originally provided water services to customers in the City and expanded its services over time into portions of Delaware and Chester Counties. *In re: Chester Water Auth. Tr.*, 263 A.3d 689, 692 (Pa. Cmwlth. 2021). From 1939 to 2012, a five-member board appointed by the City governed the Authority (Old Board). On August 27, 2012, Section 5610(a.1) of the MAA became effective, which provides:

> **(a.1) Water authorities and sewer authorities.—**If a water or sewer authority incorporated by one municipality provides water or sewer services to residents in at least two counties

and has water or sewer projects in more than two counties where the combined population of the served municipalities, excluding the incorporating municipality, is at least five times the population of the incorporating municipality, all of the following apply:

(1) Ninety days after the effective date of this subsection, the governing body in existence on the effective date of this subsection shall be replaced by a governing body comprised of the following:

(i) Three members appointed by the governing body from each county in which the services to residents are provided. A member under this subparagraph must reside in a town, township or borough, which receives services from the authority.

(ii) Three members appointed by the governing body of the incorporating municipality.

(2) A member serving under paragraph (1) shall serve for a term of five years.

53 Pa.C.S. § 5610(a.1) (footnote omitted). Accordingly, by operation of Section 5610(a.1), the Authority's Old Board was replaced by a nine-member board composed of three members appointed by each of the City, Delaware County, and Chester County (New Board). However, while Section 5610(a.1) provided Delaware and Chester Counties with the power to appoint members to the Authority's board, the legislature did not concomitantly elevate the status of municipalities with Section 5610(a.1) appointment powers to municipalities that created, incorporated, or joined the Authority. *See* 53 Pa.C.S. § 5603 (providing the incorporating municipality or municipalities execute articles of incorporation filed with the Secretary of the Commonwealth); 53 Pa.C.S. § 5604 (stating any municipality can join an existing authority by resolution or ordinance and filing an application with the Secretary of the Commonwealth). In fact, there is no dispute that Delaware County and Chester County did not create, incorporate, or join the Authority.

In 2017, Aqua Pennsylvania, Inc. (Aqua) submitted an unsolicited offer of $320 million to purchase the Authority, which the New Board unanimously rejected. Nonetheless, the City, which had been designated as a financially distressed municipality, began contemplating options to monetize the Authority's assets. In response to the City's intentions and Aqua's offer, the Authority executed a declaration of trust in 2019 to transfer its assets into a trust and filed a trust petition seeking the court of common pleas' approval. The City and Aqua, among other parties, objected and filed motions for judgment on the pleadings asserting only the City had the power to transfer the Authority's assets under Section 5622(a). During the trust litigation, the City filed a separate complaint against the Authority seeking a declaratory judgment that Section 5622(a) gave the City the unilateral power to obtain and sell the Authority and an injunction precluding the Authority from interfering with that right and from encumbering or dissipating the Authority's assets. Aqua and the City filed motions for judgement on the pleadings in the trust petition action, and the City filed a motion for judgment on the pleadings in the declaratory judgment action.

The trial court denied the motions in both cases, reasoning that under Section 5622(a) any conveyance of the Authority must be authorized by the Authority's current governing body, *i.e.*, the New Board. After granting permission to appeal, the Commonwealth Court reversed. The Commonwealth Court held that "despite section 5610(a.1) of the MAA, the City possesses the sole power under section 5622(a) of the MAA to demand and compel the conveyance of the Authority and its assets by enacting the appropriate resolution and/or ordinance." *In re: Chester Water Auth. Tr.*, 263 A.3d at 706. The court further emphasized that its decision was limited to the scope of the City's general power under Section 5622(a), and it did not reach "the separate issue of whether the City can satisfy all of the conditions within section 5622(a) and obtain *all* of the assets

of the Authority." *Id.* (emphasis in original). We granted allowance of appeal to review the Commonwealth Court's statutory interpretation of Section 5622(a).

The Majority reverses the Commonwealth Court based on its conclusion that the "City no longer possesses the unilateral authority under Section 5622(a) to acquire its projects because those projects are no longer projects 'of a character' that City 'has power to establish, maintain or operate' as they once were when CWA was governed by the Old Board." Maj. Op. at 57. In the Majority's view, the combination of Section 5622(a) and the definition of "project" in Section 5602 in the present tense as "any structure, facility or undertaking which an authority is authorized to acquire, construct, finance, improve, maintain or operate," 53 Pa.C.S. § 5602, means that a municipality seeking to acquire an authority's project must have the present "power to establish, maintain, or operate" the project. Maj. Op. at 55. The Majority further characterizes Section 5622(a) as containing two clauses: the "project-defining clause" and the "conveyance clause." *Id.* at 38-41. Because the "project-defining clause" states that "[i]f a project established under this chapter by a board appointed by a municipality is of a character which the municipality has power to establish, maintain or operate," 53 Pa.C.S. § 5622(a), the Majority reasons that "a project established . . . by a board appointed by a municipality" is distinct from a project that currently "is of a character which the municipality has power to establish, maintain or operate." Maj. Op. at 39 (quoting 53 Pa.C.S. § 5622(a)). This leads the Majority to conclude that "Section 5622(a) only permits a conveyance of a project to a municipality (or municipalities) that today controls the authority." *Id.* at 40.

Proceeding to the "conveyance clause" in Section 5622(a), which provides "it may by appropriate resolution or ordinance adopted by the proper authorities signify its desire to do so, and the authorities shall convey by appropriate instrument the project to the municipality upon the assumption by the municipality of all the obligations incurred by the

authorities with respect to that project," 53 Pa.C.S. § 5622(a), the Majority opines that "it becomes clear that the municipality (or municipalities) that may force the conveyance of an authority project are not set in stone for all time under Section 5622(a) after projects are established." Maj. Op. at 41. The Majority acknowledges that "City was once the only municipality that could have invoked Section 5622(a) (or its predecessor, Section 18(A)) to acquire [the Authority's] projects." *Id.* at 50. However, in the Majority's view, "Section 5622(a) is not static by its plain terms and it did not empower City to retain its conveyance power in perpetuity." *Id.* at 51. Nonetheless, the Majority notes that "City is a municipality that may exercise Section 5622(a) powers if the other terms of Section 5622(a) are satisfied," but City no longer has the power to establish, maintain, or operate the Authority's projects because all the Authority's projects "are now of a character that the participating municipalities (Chester County, Delaware County and City, collectively) have the 'power to establish, maintain or operate.'" *Id.* at 55.

Accepting the Majority's construction of Section 5622(a) as containing two clauses, I disagree that the "project-defining clause" combined with the definition of "project" in Section 5602 means the City can no longer acquire the Authority's projects because it does not currently have the power to establish, maintain, or operate them. Instead, Section 5622(a)'s plain language read together with the plain language of Section 5619(a) shows that the City has the present ability to acquire the Authority's projects established by the Old Board.

Initially, the "project-defining clause" clearly states a municipality may adopt a resolution or ordinance to acquire "a project established under this chapter by a board appointed by a municipality." This limits a municipality's Section 5622(a) acquisition power to a project that was "established" by a board appointed by a municipality. The term "establish" is defined as "[t]o settle, make, or fix firmly; to enact permanently" and

"[t]o make or form; to bring about or into existence[.]"  Establish, BLACK'S LAW DICTIONARY (12th ed. 2024).  Accordingly, Section 5622(a) clearly provides a municipality with the power to seek to acquire a project that was made, formed, or brought into existence by a board appointed by the municipality.  As the Majority acknowledges, in this case, "[t]here is no dispute that [the Authority's] projects were originally established by a board appointed by a municipality, that is, by the Old Board.  But some of [the Authority's] projects were established by [the Authority] as governed by the New Board."  Maj. Op. at 38.  Significantly, Section 5622(a) uses "established" to define the project, not maintained by or operated by, so the relevant inquiry is whether the project the municipality seeks to acquire is one which a board appointed by the municipality originally made, formed, or brought into existence.  Again, there is no dispute that the Authority's original projects were established by the Old Board, which was appointed by the City, and thus, they meet this requirement.

That is not, however, the only requirement in the "project-defining clause," as it continues that the project a municipality seeks to acquire must be "of a character which the municipality has power to establish, maintain or operate[.]"  53 Pa.C.S. § 5622(a).  I disagree with the Majority that the City does not have the current power to establish, maintain, or operate the Authority's projects, regardless of the composition of the Authority's board.  The Majority aptly recognizes that "Section 5622(a) cannot be read in isolation."  Maj. Op. at 36.  Under the MAA's framework, both Sections 5622(a) and 5619 "address the transfer of an authority's project to the municipality or municipalities that created the authority."  *Cnty. of Allegheny v. Moon Twp. Mun. Auth.*, 671 A.2d 662, 665 (Pa. 1996) (analyzing the 1945 MAA predecessors of Section 5619 and 5622(a), which are substantially identical to the current sections); *accord Mifflin Cnty. v. Mifflin Cnty. Airport Auth.*, 437 A.2d 781, 783 (noting Section 14 of the 1945 MAA, the predecessor to

53 Pa.C.S. § 5619, combined with Section 18(A) of the 1945 MAA, the predecessor to 53 Pa.C.S. § 5622(a), apply when a municipality seeks to acquire a project).

Section 5619, mentioned in a footnote by the Majority, provides:

> **(a) Conveyance of projects.—**When an authority has finally paid and discharged all bonds, with interest due, which have been secured by a pledge of any of the revenues or receipts of a project, the authority may, subject to agreements concerning the operation or disposition of the project, convey the project to the municipality creating the authority or, if the project is a public school project, to the school district to which the project is leased.
>
> **(b) Conveyance of property.—**When an authority has finally paid and discharged all bonds issued and outstanding and the interest due on them and settled all other outstanding claims against it, the authority may convey all its property to the municipality or municipalities or, if the property is public school property, then to the school district for which the property was financed, and terminate its existence.
>
> **(c) Certificate.—**An authority requesting to terminate its existence must submit a certificate requesting termination to the municipality which created it. If the certificate is approved by the municipality by its ordinance or resolution, the certificate shall be filed in the office of the Secretary of the Commonwealth; and the secretary shall note the termination of existence on the record of incorporation and return the certificate with approval to the board. The board shall cause the certificate to be recorded in the office of the recorder of deeds of the county. Upon recording, the property of the authority shall pass to the municipality or municipalities or, if the property is public school property, then to the school district for which the property was financed; and the authority shall cease to exist.

53 Pa.C.S. § 5619.

Subsection 5619(a) is relevant here as it applies to an authority's conveyance of projects. It provides that an authority may convey its projects, after paying and discharging all bonds secured by those projects, "subject to agreements concerning the

operation or disposition of the project, to the municipality creating the authority." 53 Pa.C.S. § 5619(a). This plainly means that "the municipality creating the authority" retains inherent power to establish, maintain, or operate the projects of the authority because, as long as the other conditions of 5619(a) are satisfied, the authority can always convey its projects to the municipality that created it. Further, despite the "impediments" Section 5619(a) imposes on the conveyance of an authority's projects, it does not preclude the conveyance of projects to the creating municipality when an authority's board is composed of two or more municipalities. *See Cnty. of Allegheny*, 671 A.2d at 665 (noting the predecessors to Sections 5619 and 5622(a) "were presumably enacted to preclude a municipality from obtaining title to projects until the authority had entirely paid off its debts, and from assuming responsibility over projects absent a resolution or ordinance indicating the municipality's clear willingness to do so"); *Twp. of Forks v. Forks Twp. Mun. Sewer Auth.*, 759 A.2d 47, 52 (Pa. Cmwlth. 2000) ("Section 14 [now 53 Pa.C.S. § 5619] has been held to authorize the Township, as the creating municipality, to take over the Project pursuant to Section 18A [now 53 Pa.C.S. § 5622(a)] after the impediments of Section 14 in the form of agreements, claims and outstanding debt obligations (the Bonds) are discharged"); *Forward Twp. Sanitary Sewage Auth. v. Twp. of Forward*, 654 A.2d 170, 173 (Pa. Cmwlth. 1995) ("where there are no impediments under [S]ection 14 of the Municipality Act [now 53 Pa.C.S. § 5619], and an authority is not foisting its debts upon a municipality without its consent, a municipality has the power to take over the project of an authority pursuant to [S]ection 18(A) [now 53 Pa.C.S. § 5622(a)]"); *Mifflin Cnty.*, 437 A.2d at 783. It would be nonsensical for the legislature to permit an authority to convey its projects to the creating municipality under Section 5619(a) if the creating municipality did not have the power to maintain or operate those projects. *See* 1 Pa.C.S. § 1922(1)-

(2) (the legislature "does not intend a result that is absurd, impossible of execution or unreasonable[,]" and it "intends the entire statute to be effective and certain").

Based on the foregoing, I disagree with the Majority's conclusion that "Section 5622(a) only permits a conveyance of a project to a municipality (or municipalities) that today controls the authority," Maj. Op. at 40, because that is inconsistent with Section 5622(a)'s requirement that the project was established by a board appointed by a municipality as well as Section 5619(a)'s authorization of an authority's conveyance of a project (subject to its impediments) to the municipality creating the authority. Moreover, despite the addition of Section 5610(a.1), expanding the composition of a multi-jurisdictional authority's board, the legislature retained and did not alter Sections 5619(a) or 5622(a).

Accordingly, the plain language of Sections 5619(a) and 5622(a) provide that a project established by a board appointed by a municipality may be acquired by and conveyed to a municipality that has the power to establish, maintain, or operate the project, a power that the creating municipality retains. Here, the City is a municipality that can exercise Section 5622(a) because it was the municipality that appointed the Old Board that established the Authority's original projects, and it has the current power—as the municipality that created the Authority—to establish, maintain, or operate those projects as provided in Section 5619(a).[1] Therefore, I would affirm the Commonwealth Court's order, and I dissent to the Majority's ultimate holding.

---

[1] The Majority's rejoinder refuses to recognize that Section 5622(a) and Section 5619(a) are two sides of the same coin. *See* Maj. Op. at 57 n.33. Section 5622(a) permits a municipality to force the conveyance of an authority's project, and Section 5619(a) limits an authority's ability to convey its projects to a municipality. As our cases have observed, when a municipality seeks to force a conveyance under Section 5622(a), the conditions of Section 5619(a) still must be satisfied for the authority to complete that conveyance. *See Cnty. of Allegheny*, 671 A.2d at 665; *Mifflin Cnty.*, 437 A.2d at 783. The Majority cites no authority to support its view that Sections 5619(a) and 5622(a) contain "distinct (continued…)

powers articulated with different language, and nothing in the text of the MAA dictates that Sections 5619(a) and 5622(a) are symmetrically related." Maj. Op. at 57 n.33. In fact, the Majority's construction of Sections 5619(a) and 5622(a) as unrelated contravenes all the cases that have previously interpreted the interaction of those sections. *See Cnty. of Allegheny*, 671 A.2d at 665; *Mifflin Cnty.*, 437 A.2d at 783; *Twp. of Forks*, 759 A.2d at 52; *Forward Twp. Sanitary Sewage Auth.*, 654 A.2d at 173.

While I agree with the Majority that Section 5622(a) is not ambiguous, I disagree with its holding that the City cannot unilaterally force a conveyance under the plain language Section 5622(a). *See* Maj. Op. at 57 n.33. Under the MAA's framework, the City, as the creating municipality of the Authority, has the present ability pursuant to Section 5619(a) to establish, maintain, or operate the Authority's projects established by the Old Board, regardless of the current composition of the Authority's board, and can, thus, force the conveyance of the Authority's projects under Section 5622(a).